**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

UNITED STATES OF AMERICA,

        *Plaintiff,*

v.

        Case No. 24-CR-10086-EFM

TREYLIS PRESLEY, JR.,

        *Defendant.*

## MEMORANDUM AND ORDER

Before the Court is Defendant Treylis Presley, Jr.'s Motion to Suppress evidence seized in violation of his Fourth Amendment rights (Doc. 10). Defendant argues that after the deputy's investigation into his traffic violations concluded, the deputy had no independent reasonable suspicion to justify prolonging the stop to call for a drug dog. Defendant claims that unconstitutionally prolonging his traffic stop requires that the fruits of the dog sniff be suppressed. The Government argues that, under the totality of the circumstances, the deputy had independent reasonable suspicion to prolong the traffic stop, so the fruits of the dog sniff should not be suppressed. For the reasons stated below, the Court finds that the deputy had independent reasonable suspicion to prolong the traffic stop, and so Defendant's Motion to Suppress is denied.

### I.      Factual and Procedural Background

In the early morning hours on December 30, 2023, Sedgwick County Sheriff's Deputy Cody Mussman was patrolling in the vicinity of the 54 Express Inn located on West Kellogg Avenue in Wichita, Kansas. At 2:55 a.m., Mussman observed a white Ford F-150 truck parked at

the Express Inn with its lights on and engine running. The truck remained there until it left the Express Inn at 3:39 a.m. Upon leaving, the driver of the vehicle, later identified as Defendant, committed two traffic violations. First, he failed to stop when exiting the hotel's private drive. Then, he made two lane changes on Kellogg Avenue without using a turn signal.

Having observed these violations, Mussman began following the truck. The truck entered a left-turn lane and made a U-turn once the green arrow signaled. Mussman U-turned with the truck and then immediately turned on his patrol vehicle's lights to initiate a traffic stop. Defendant took approximately 30 seconds to stop the truck. After swerving several times, Defendant ultimately pulled to the right side of the road on Kellogg Avenue, and rolled slowly forward before stopping at 3:40 a.m.

After the truck came to a complete stop, Mussman approached the passenger's side of the truck and spoke with Defendant, who was the only occupant. Mussman advised Defendant that he stopped him for failing to use a turn signal when he drove across two lanes. Mussman asked Defendant for his driver's license and proof of insurance. Mussman asked Defendant if the truck was his, and he said it was not. Defendant produced an Arizona identification card and told Mussman that he did not have a driver's license or a Kansas identification card.

With Defendant's Arizona identification card in hand, Mussman told Defendant to look for the insurance and returned to his patrol vehicle to run various checks on Defendant and the truck. At 3:49 a.m., dispatch advised Mussman that Defendant was a gang member, violent offender, and drug offender; was on "supervised release status;" had a suspended Kansas driver's license; and was "on federal parole." At 3:51 a.m., Mussman asked dispatch to send a drug dog to the scene to sniff the truck for the odor of illegal drugs.

Next, Mussman exited his patrol vehicle and approached Defendant on the driver's side of the truck. When he arrived, Defendant was on a video call with the owner of the vehicle. She told Defendant the vehicle was uninsured, and Defendant relayed this information to Mussman.

Mussman then returned to his vehicle and spoke with Deputy Alan Nye, who had arrived on the scene. Nye told Mussman that he had come to the scene to assist him after hearing on the police radio that the stop occurred near the 54 Express Inn—a known drug spot. Nye told Mussman he had made a drug stop at that same hotel just five days prior.

After this brief conversation, Mussman reapproached the truck on the driver's side, asked Defendant to shut off his vehicle, and directed him to step out of the truck, advising him that he was not under arrest. After patting Defendant down for weapons, Mussman directed Defendant to have a seat in his patrol vehicle pending the arrival of a drug dog. Defendant then sat in the vehicle without handcuffs. Defendant entered the patrol vehicle at 3:55 a.m.

At around 4:11 a.m., Deputy Kaleb Dailey arrived on the scene with his drug dog. The dog ran around the truck and alerted on the vehicle at 4:12 a.m. After the drug dog alerted, Mussman searched the truck. He found a firearm hidden beneath the floormat on the driver's side floorboard. He described the firearm to dispatch as a black Taurus model G2C 9-millimeter handgun. After completing the search, Mussman arrested Defendant for illegal possession of the firearm.

On July 9, 2024, Defendant was indicted for violating 18 U.S.C. § 922(g)(1), a felon in possession of a firearm. On September 6, 2024, Defendant filed this Motion to Suppress. The Government timely responded, and Defendant timely replied. On December 17, 2024, the Court held a hearing. The matters, now fully briefed and submitted, are ripe for the Court's ruling.

## II.    Legal Standard

The Fourth Amendment states: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."[1] Under the exclusionary rule, "evidence obtained in violation of the Fourth Amendment cannot be used in a criminal proceeding against the victim of the illegal search and seizure."[2] If a search or seizure violates the Fourth Amendment, the "fruit of the poisonous tree" doctrine prohibits the admission of any subsequently obtained evidence, including information, objects, or statements.[3] Searches must be authorized by a warrant unless an exception to the warrant requirement applies.[4] The government bears the burden to prove that a warrantless search or seizure was justified.[5]

## III.    Analysis

The issue before this Court is whether the deputy had reasonable suspicion to justify prolonging the traffic stop to call for a drug dog after the investigation into Defendant's traffic violations had conclusively ended. The Government contends that the prolonged stop was constitutional under the Fourth Amendment because the deputy had a reasonable suspicion that Defendant was engaging in drug crimes. Defendant argues that the deputy had no such reasonable suspicion, so the prolonged stop was unconstitutional.

Police do not need reasonable suspicion to conduct an exterior dog sniff of a vehicle during a lawful traffic stop so long as the dog sniff does not "prolong the stop 'beyond the time reasonably

---

[1] U.S. Const. amend. IV.

[2] *United States v. Calandra*, 414 U.S. 338, 347 (1974).

[3] *Wong Sun v. United States*, 371 U.S. 471, 487–88 (1963).

[4] *California v. Carney*, 471 U.S. 386, 390 (1985).

[5] *United States v. Zubia-Melendez*, 263 F.3d 1155, 1160 (10th Cir. 2001) (citations omitted).

required to complete the mission of issuing a ticket for the violation.'"[6] However, a dog sniff that does prolong a traffic stop may nonetheless be lawful if police have independent reasonable suspicion that criminal activity is afoot.[7]

"Reasonable suspicion is a lower standard than probable cause and falls considerably short of satisfying a preponderance of the evidence standard."[8] "Police have reasonable suspicion if they have a particularized and objective basis for suspecting criminal conduct under a totality of the circumstances."[9] "An officer may rely on his own experiences to make inferences from and deductions about the cumulative information available to him."[10] And courts must "grant deference to a trained law enforcement officer's ability to distinguish between innocent and suspicious circumstances."[11]

The following non-exhaustive factors may contribute to reasonable suspicion for extending a traffic stop: (1) a high-crime area;[12] (2) a short-term stop at a hotel;[13] (3) the time of day;[14]

---

[6] *United States v. McMillin*, 603 F. Supp. 3d 1044, 1048 (D. Kan. 2022) (citing *Rodriguez v. United States*, 575 U.S. 348, 350 (2015)).

[7] *See United States v. Ahmed*, 825 F. App'x 589, 592 (10th Cir. 2020).

[8] *United States v. Valenzuela-Rojo*, 139 F. Supp. 3d 1252, 1260 (D. Kan. 2015) (citations and quotations omitted).

[9] *Ahmed*, 825 F. App'x at 592 (citations and quotations omitted).

[10] *Valenzuela-Rojo*, 139 F. Supp. 3d at 1260 (citations, quotations, and brackets omitted).

[11] *United States v. $39,440.00 in U.S. Currency*, 39 F. Supp. 3d 1169, 1174 (D. Kan. 2014).

[12] *United States v. Guardado*, 699 F.3d 1220, 1223 (10th Cir. 2012) ("In determining the reasonableness of an officer's suspicion, we have considered a number of factors including: the area's disposition toward criminal activity.").

[13] *See United States v. Burnett*, 240 F. Supp. 2d 1183, 1190–91 (D. Kan. 2002) (factoring defendant's brief stop in the parking lot of a motel at which the police had made several drug arrests in the past into the reasonable suspicion analysis).

[14] *United States v. Clarkson*, 551 F.3d 1196, 1202 (10th Cir. 2009) ("This court has also considered the time of night as a factor in determining the existence of reasonable suspicion.").

(4) failure to promptly pull over;[15] (5) driving a vehicle registered to an absent third party;[16] (6) driving without a valid driver's license or insurance;[17] (7) prior criminal history;[18] and (8) lies, evasion, or inconsistencies.[19] "Each factor is not to be considered in isolation because even though one factor alone may be innocently explained, the factors considered together can support reasonable suspicion."[20] The Court will examine these seemingly innocuous factors and determine whether, in the aggregate, they can amount to a reasonable, articulable suspicion that Defendant was engaged in criminal activity.

## A.    High-Crime Area

Before the traffic stop occurred, Mussman observed Defendant leaving the 54 Express Inn, a hotel known to local police as a hub for drug crimes. Mussman knew of several officers who had stopped vehicles coming in and out of that hotel for drug crimes. And within the same month he stopped Defendant, Mussman himself had two ongoing cases in which marijuana and methamphetamine respectively were discovered after he stopped vehicles coming and going from the hotel for traffic violations. Moreover, after Nye heard over the radio that Mussman had stopped Defendant near the 54 Express Inn, Nye decided to join him for backup due to Nye's recent

---

[15] *Shaw v. Schulte*, 36 F.4th 1006, 1015 (10th Cir. 2022) ("[A]n individual's failure to promptly stop in response to a police officer attempting to conduct a traffic stop supports reasonable suspicion of criminal activity beyond a mere traffic violation.").

[16] *United States v. Ludwig*, 641 F.3d 1243, 1249 (10th Cir. 2011) ("[D]riving a vehicle registered to a third party who wasn't present . . . is a factor we have often held may indicate . . . drug trafficking." (citations, quotations, and brackets omitted)).

[17] *United States v. Pettit*, 785 F.3d 1374, 1382 (10th Cir. 2015) ("[D]riving with a suspended license can contribute to the formation of an objectively reasonable suspicion of illegal activity." (citations and quotations omitted)); *see also United States v. Garcia*, 52 F. Supp. 2d 1239, 1250 (D. Kan. 1999) ("[D]riving on a suspended license or without verification of insurance are factors supporting reasonable suspicion.").

[18] *United States v. Davis*, 636 F.3d 1281, 1291 (10th Cir. 2011) ("A previous criminal history may also weigh in favor of an officer's reasonable suspicion of illegal activity.").

[19] *Id.* ("One factor is an individual's internally inconsistent statements.")

[20] *$39,440.00 in U.S. Currency*, 39 F. Supp. 3d at 1173 (citing *United States v. Lopez*, 518 F.3d 790, 797 (10th Cir. 2008)).

experiences with drug crimes in that area. Specifically, Mussman was aware of one of Nye's recent cases concerning a drug overdose at the hotel. Defendant does not contest that he was located in a known area for drug crimes at the time of the stop. Thus, this factor supports the deputy's reasonable suspicion.

**B.**    **Time of Day**

The parties agree that the traffic stop occurred around 3:00 a.m. Criminal activity is far more likely to occur at night or in the early hours of the morning than in broad daylight. This factor supports the deputy's reasonable suspicion.

**C.**    **Short-Term Stop at a Hotel**

Next, Defendant's vehicle remained running with its lights on for 30–45 minutes while he was parked at the hotel. When Mussman asked Defendant if he was staying at the hotel, Defendant answered that he was not; rather, he was just visiting a friend. The Government argues that this indicates Defendant intended a short-term visit to the hotel, which is consistent with drug activity.

Defendant argues that sitting in the vehicle for a prolonged period of time without hastily exiting or reentering the vehicle undermines any argument that he was engaged in drug trafficking. If he had been engaged in drug trafficking, Defendant argues that he would have exited the vehicle and gone inside the hotel, or someone from the hotel would have met him at his truck. He also argues that if he were completing a drug deal, the stop would have been much quicker than 30–45 minutes.

It is certainly out of the ordinary that Defendant would visit a friend at a hotel for known drug trafficking at 3:00 a.m., but never leave the vehicle, and only stay for between 30–45 minutes. However, Mussman never observed Defendant go inside the hotel or someone meet Defendant at his truck in the hotel parking lot. Moreover, the stop was not as brief as expected for a drug transaction to occur. Accordingly, this factor could favor either party.

D.     **Failure to Promptly Pull Over**

Immediately after Mussman followed Defendant through the left-turn traffic light signal, Mussman turned on his police light but not the siren. When Mussman signaled for him to stop, Defendant waited about 30 seconds to come to a complete stop. Defendant swerved several times before pulling his vehicle to the shoulder of the road. At the time of the stop, there were no other cars on the highway. The Government argues that Defendant's delayed stop indicated that he could have been hiding an item, such as a firearm or contraband. Defendant contends that because the siren did not alarm, he may not have immediately known he was being pulled over, and he could have used that additional time to retrieve an item such as his insurance paperwork or his identification card.

The Court is unconvinced that Defendant did not know he was being pulled over. It was dark outside, so the deputy's lights were easily visible. Moreover, there were no other cars on the road, so there was no chance the deputy could have been pulling someone else over. Additionally, when Mussman approached the vehicle, Defendant did not have his identification card ready. It was not until after Mussman asked to see Defendant's license, that Defendant started searching his pockets for his wallet and then handed Mussman his identification card a few moments later. There was an envelope sitting on the passenger seat, which Defendant initially said he thought contained the insurance paperwork. But later Mussman discovered that the envelope did not contain any insurance paperwork, and the truck was uninsured.

Defendant's failure to promptly pull over—and swerving in the process—could be explained by frantically searching for the vehicle's insurance paperwork and placing it on the passenger seat. However, it is just as plausible that Defendant could have spent that time hiding something in the vehicle, and it would be reasonable for Mussman to suspect as such. Thus, this factor supports the deputy's reasonable suspicion.

**E.    Driving a Vehicle Registered to an Absent Third Party**

Defendant was driving a vehicle that was not registered to him or insured by him, and the owner of the vehicle was not present with him in the vehicle. The Government argues that driving an absent third party's vehicle is common enough among drug traffickers to peak reasonable suspicion. Defendant argues that Mussman overheard Defendant on a video call with the vehicle's owner, during which Defendant asked her about the status of the vehicle's insurance. Defendant claims that this conversation should have cleared Mussman's suspicions because, at that point, he knew that Defendant had authority to drive the truck. The Government contends that although this may have cleared Mussman's suspicion that Defendant was driving a stolen vehicle, it did not necessarily clear Mussman's suspicion that Defendant was involved in drug trafficking.

In this unusual factual scenario, although the truck's owner was not physically present, she did appear via video call and confirm that Defendant at least had apparent authority to drive her truck. Accordingly, whether the truck's owner was absent or present could favor either party.

**F.    Driving without a Valid Driver's License or Insurance**

Next, Defendant did not have a valid driver's license or insurance. Under Kansas law, it is a crime to drive an uninsured vehicle and to drive without a valid license. The Tenth Circuit has held that committing those specific crimes can create an independent reasonable suspicion of additional illegal activity.[21] Defendant has no response to these facts. Thus, this factor supports the deputy's reasonable suspicion.

---

[21] *Pettit*, 785 F.3d at 1382 (citations omitted) (finding that driving an uninsured vehicle with a suspended license can "contribute to the formation of an objectively reasonable suspicion of illegal activity").

**G.** **Prior Criminal History**

After Mussman ran Defendant's Arizona identification card, he discovered that Defendant was on federal supervised release for a drug crime, indicating a previous criminal history involving drugs. The only response Defendant has is that criminal history alone is insufficient to support reasonable suspicion. The Court agrees; however, criminal history is not being considered alone. Rather, it is another factor—among many—which supports the deputy's reasonable suspicion that further criminal activity, such as drug trafficking, was afoot.

**H.** **Lies, Evasion, or Inconsistencies**

When Mussman approached the vehicle and asked for Defendant's identification, Defendant handed him an Arizona identification card. Mussman asked him, "Do you have a driver's license?" Defendant answered, "No, I don't have a driver's license." Then Mussman said, "Okay, do you have a Kansas ID at all?" Defendant replied, "I don't."

The Government argues that Defendant lied to Mussman about not having a Kansas driver's license. Defendant argues that he did not lie to Mussman because his Kansas license was suspended, and so he no longer had a valid license. The Court finds that Defendant did not lie to Mussman. Although Defendant could have more precisely explained that he did not have a *valid* driver's license, it was reasonable for Defendant to tell Mussman that he did not have a license. Defendant's language does not amount to the lies, evasion, or inconsistencies that are usually required to favor the law enforcement officer. As such, this factor favors Defendant.

**I.** **Totality of the Circumstances**

Of the eight factors, one favors Defendant, five favor the Government, and two are inconclusive. It is possible that each factor, in isolation, could be explained away. However, when considering the totality of the circumstances, the Court finds that Mussman had a particularized and objective basis for suspecting criminal conduct based on his training, experience, and the

cumulative information available to him. This reasonable suspicion justified Defendant's prolonged detention to obtain a dog sniff, and so the Court will not suppress the fruits of the search.

**IT IS THEREFORE ORDERED** that Defendant Treylis Presley, Jr.'s Motion to Suppress (Doc. 10) is **DENIED**.

**IT IS SO ORDERED.**

Dated this 20th day of December, 2024.


ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE